No. 515-0302. The court will note at the outset that a motion decided this authority was filed against us this morning by actually a counsel here. And the court, we discussed this, will grant a motion to allow the State 21 days to respond. The State appreciates that, Your Honor. Thank you. And the State has no objection to the motion. It just came in. Okay. How about December the 21st? That's no longer on, Your Honor. Okay. All right. Thank you. Thank you, Senator. You may proceed. And I apologize on the short notice of that, but that just came out yesterday. So may you please record, counsel, my name is Barbara Gobin. I represent the respondent, H.P. This is the appeal of the involuntary medication order from Randolph County. The interesting argument in this case is that the doctor prescribed the palatine minister five medications simultaneously, including two antipsychotics, olanzapine and halidol, at the same time. Now, so help me clarify this. Were they specifically designated to be administered at the same time or was the request that these be considered so that they could be kind of pick and choose which antipsychotic drug they were going to use? They weren't clarified on that, but that was listed as the primary and then there was five as alternative. Okay. So I have one case where it was two different antipsychotics, but the doctor testified, oh, I'm going to do this one first and then this one. Here the doctor didn't testify that he would do one first and second. But we don't know whether or not they were going to be given simultaneously or as alternatives. Right. But the way the order is drafted is that those five are the primary, so he has the power to administer all five at the same time. Right. And then the alternatives are the five others. So I'm not taking to the combination of all ten at the same time, but the main five. There is clear case law that, you know, the state has to prove clear and convincing evidence that the risk is less than the benefits. And we did provide information on each individual medication, but not the combination of the medication. And there is, and he didn't testify how the combination of lorazepam and Havodol, if administered simultaneously, which is called polypharmacy, does have increased side effects. And that was not mentioned to the judge at that time. But information was omitted. So what case law do you have with respect to the requirement that there be findings, or not findings, but testimony on interactions, potential interactions with polypharmacy? Well, this is actually almost a case of the first impression on that point. There is two cases that kind of relate on that issue. One is Perona, where the doctor testified that the two neuroleptic drugs were used together on rare occasions because they're more effective together. So they allow, they sanctioned that one because the doctor testified that the polypharmacy was needed in that situation. So here there's no testimony about whether or not, why needed, or what the interactions are? Yeah, why the lorazepam and the Havodol were needed, administered simultaneously. Now, in similar cases they are, because it's a very, you know, it's about 20 to 30% of the cases I said that they are needed because of its intractable, you know, illness. But there is an increased side effects when you use the combination of the, both drugs together can increase the side effects. So really there was no information given to the judge on, hey, I'm administering both of these at the same time, so they're doing it similarly or simultaneously, you know. And I think the judge, in the role as parenthesis parentae and make sure that this is the safe and effective and least restricting environment, needs to know the information on the risk of the combination of the whole treatment. There's also a case, Marion P., which is the Illinois Supreme Court case. That is the time when the juries can pick and choose, juries can do involuntary medication. They pick and chose what kind of treatment, and they said, no, the court has to consider the treatment as a whole, not each individual pieces. So I'm thinking, and it says the risks and benefits of the treatment, so if you consider the treatment as a whole, which would be either the five or the three medications, which the state wasn't clear on the evidence, you know, I think that they would have to inform the judge in his or her role as parenthesis parentae of the risk of combining those two antipsychotics together. And I now address this and actually bring that more to this than I never thought of. You know, we look at each individual drugs together, but not the combination of the whole and the treatment as a whole. And especially in this case, when it's two antipsychotics together, the lack of evidence here just doesn't make that clear and effective evidence standard that the state needs to provide on this. Okay. I'm not sure where you were headed next, but I wanted to know about the, what you believe should have been testified to with respect to the ordering of blood testing or other. Well, usually what's standard practice is that the doctors have to find what testing are you requesting. And then they specify the testing, and is this necessary and safe for the sake of effective administration of the medication, they say yes. Here that evidence isn't clear, that doctor doesn't present evidence of what is, what and why the testing is needed. And actually it's interesting, the detailed evidence of the testing presents information about the side effects that we didn't know about, about the meds, because they'll say, oh, we need to know about the drug levels, because that can cause, or positive can cause a change in white blood cells, and that's why we need the white blood cell count test. So it actually informs the judge on what some details and side effects of the medication. So this does present an interesting case of the power of pharmacy, the risks versus the benefits. We think in order to adequately inform the court, and also the respondent, that the doctor needs to present information on the combination of the drugs presented. Also, the other issue is the lack of common unity between the evidence presented and the final order. There was, the doctor didn't present evidence on who would be the administrating, treating physicians. And this is kind of interesting, this case, because the client testifies, I get a rotating round of physicians. It's actually very short in transcript, you know, 10 pages, 11, but he actually testifies, I get this one doctor and this one doctor and this, and he's confused. So it actually puts more to the point of why he needs to know who's going to be administering these medications. Now, it's not required, it's required in the statute that the order state who are the doctors. And that was stated, correct? No, it wasn't stated, it was in the petition, that it wasn't stated as evidence. Oh, oh, I see. So they did, they identified doctors who may be treating him, but you're saying it did not go into any of the testimony that was in there? No, it was in the petition. They didn't mention it at all, and then they ordered it. Okay. And then also the issue of ineffective assistance of counsel. I think this is an interesting case because there may be element of prejudice because the combination of these medications, if they're administered simultaneously, can increase the risk of side effects. So there is that issue of, you know, it's not just a trial tactic not to argue why are you administering these two antipsychotics simultaneously. I think there is an issue of ineffective assistance of counsel on this, too. And then on the final issue of mootness, counsel on the other side said that the issue of testing should be denied. If it's denied because it's moot, we would also argue there is some Illinois Supreme Court law following the federal court law. If the issue is moot, then the underlying judgment should be vacated to get rid of any residual doubt from the order, residual impairment from the order, and the person should have the ability to appeal. But we think because this is a really issue of first impression on the public pharmacy, I mean, there is some case law that says to look at the treatment of the whole. We think this would go under the public interest exception of mootness. Is this particular individual at risk of getting treatment again? Oh, yeah. I mean, he's long-term, right? Yeah, he's had 11 admissions by the time. So why isn't it under the other exception where the ability to... Oh, I argued both. I just want to make sure that you're not relying only on the public interest exception. No, I did a typical reputation in public interest, but I didn't argue for it. You're talking about the fact that this is the most case of first impression. Right. Yeah. And I think this would be helpful for practitioners on this. So you think an opinion is better? Well, if it's favorable for practitioners. Depends on which way it goes. But actually, either way. At least you're honest about it. But, I mean, because of his long history, the collateral consequences exception does not apply here, so. Thank you for your time. I don't want your notes here. Your honors, counsel, and please, the court, Kelly states the appearing on behalf of the state of Illinois. The issue in this case really is whether the trial court complied with the mental health code. The respondent concedes that the doctor testified the benefits of the proposed medication outweighed any of their potential harm. And he also detailed the risks, the benefits, and the dosages of the medications. So the main issue here is the issue that Ms. Philbin has been talking about, is the two medications that are ordered for antipsychotic purposes. In support of that argument, the respondent cites the Paroma case. But I would point out in the Paroma case, there was no evidence offered of any potential negative interactions of the two medications at issue. In that case, the court determined that the benefits of the medication outweighed any potential risk. But the issue of the two medications and any interactions they may pose, there was no evidence presented on that in the Paroma case. And yet it was still affirmed. It was a side issue, but it was not a major holding in the case. But the doctor in the Paroma case testified the benefits outweighed the harm, just as in this case it occurred. So I believe there was also a Fifth District case where this court addressed an issue of polypharmacy, but it did not get into any detail on whether or not the statute actually requires that. But if this court is of the opinion that the state was required to submit evidence of what those interactions of the two medications are, then the state admittedly failed to do that at the hearing. I'm not certain that the statute is that clear cut on that. But I believe the issue on, the issue definitely on the particular medications to be offered, their benefits and risks, definitely have to be covered, and that was definitely done here. But the public policy argument that's raised is really interesting in that this whole statutory scheme is designed to cover the benefits of the medication. It's designed to protect the individual, right? I would agree with that, Your Honor. So if we have passed a statute that allows us to have a court intervene before the medication is being given, and you have to say what the effects are and how it's going to be administered and all of those detailed things, I don't think that a medication in conjunction with another medication would cause harm and the court wasn't advised of that. I think you pointed out a very pertinent issue, a very significant issue. If I believe that it's known that there are certain medications that are contraindicated to be taken together, the doctor should provide testimony on that, but I don't believe the statute actually requires it. Would it be beneficial to have that? Absolutely, and I think it would be important for the judge to know that. You think that the statute doesn't require that by its plain language? Not that I can determine, and in looking at the case law, it's only, from what I saw, it's only tangentially touched upon that, but it was touched upon in the sense of where a respondent never raised any issue of could there be any medication in your application, so in other words, it wasn't the state that was required to prove there aren't any interactions here, but for the respondent to say, hey, there are some interactions here and should these be given together, done through cross-examination or some sort of petitions or anything done in the trial court, that's where that needs to be addressed, but I think if it's a known interaction, it should be stated, but this is the problem with requiring doctors to clairvoyantly determine what the court is going to need. I think that the statute needs to be laid out of what it is. It seems like we get a lot of these cases wrong. You know, that's an interesting comment by the state, because in a lot of these cases, many of these cases, you have doctor after doctor after doctor, and you know, you always wonder if the right hand knows what the left hand is doing. Because of the number of physicians who come and go, it's like a revolving door at the mental health facilities. And I can't take issue with any of that. It does appear that was the case here, and the respondent testified about the number of doctors, and it did seem to be an issue for him. But isn't that why the statute is designed to make sure we get the information before we administer? Absolutely. I mean, I can't imagine getting a medication that I don't want to take. So I can totally relate to respondents in the case, in these cases that don't want to take the medication, but I think that's why we have to rely on the experts to do this, and the statute, from what I can gather, and I don't think your opposing counsel argued that the statute does require this. Well, you know, just looking at the language that is in the statute, the plain interpretation of the benefits of treatment outweigh the harm would encompass giving combined medication that is known or reasonably known to harm somebody. I would have to agree with that. Whenever you get your medication from CVS or Walgreens, they have these huge areas of possible side effects, and sometimes some very noted interactions between medications. In fact, on the civil side, this is more of a conversation than a question, I guess, following up with what Justice Chapman indicated, now the pharmacies are so sophisticated that they can tell you when your medications conflict. It's true. Because of the number of doctors that we all go to, specialists for this or that. And now when you go pick up the medication, even the pharmacist talks to you about, have you had this before, have you had any negative interactions. So I guess, you know, from the language that Justice Chapman read, why wouldn't that statute encompass what we've just talked about? I believe it would if it were a low indication. If it were a low indication or contraindication, pardon me, then obviously that would factor into whether the benefits of the medication outweigh the harm. But you had argued that it's incumbent upon the respondent to raise that issue and not the state. I think what I'm trying to say is that, at least on the Corona case that I had an opportunity to look at a little bit more today, was that it was noted in the opinion that the respondent didn't raise that there was a contraindication between the two medications. I think it's similar to what we have here. I think some concerns about an interaction between the medications has been raised. But I don't think we know enough about, well, what are these? Well, I think that's the real crux of the issue is, is there a preliminary burden? Maybe there were none. The question is, were there any, right? We don't know as we sit here today, but I think they're saying the burden is on the state to tell us. That probably will be their position. They expect the record to reflect that someone said, we're giving this, this, this, A, B, C, D, and there are no contraindications if we give A, B, C, and D. That's what they want the record to reflect. I think if the state knows about those, then the state should be presenting that to the doctor as well. But if defense counsel knows about those and it's slipped by everyone else, I think the defense attorney should have cross-examined all that and maybe asked. I get that. I understand your position as far as what they should have done. But I think the question is, does there have to be that extra statement by the state once they get? I'm sorry? Would that then be a finding that there were no contraindications to giving these medications? Well, I don't know if we've evolved that far. Maybe it will be this case. Who knows? But what they're saying is there has to be something in the record by the state, that extra line that says we're giving A, B, C, D, and E, and there are no contraindications to giving those medicines together. With all due respect, Your Honor, I disagree what the statute requires. I'm not saying it does. I'm saying that was their position. Okay. I think I see where you're going here. If I'm understanding what they're saying the state should have done, do you agree with that? I certainly can argue with that position, and is that something that should be considered to a vote? Probably so. I mean, this sounds like it could be a pretty big issue, but I think it's up to the legislature to address that and to make an alteration to the statute. Otherwise, I think if defense counsel is aware of a contraindication in medication and it has not been brought up by the state or by the treating physician or the expert called, then I think defense counsel has to raise that. But I think these are issues that go outside of what the statute actually requires. So the state will just ask. The state admits that everything wasn't done exactly perfectly, but we believe that the trial court's order affirming the administration of the medication was the proper order in this case. And absent any other questions, we would respectfully ask you to affirm. Thank you, Judge. Thank you, Your Honor. I'm not to take too much of your time, but the statute does say treatment, risk versus benefits, not each medication. And also the Illinois Supreme Court in Marion P. considered treatment as the whole, not each individual medication. So it's just... It said risk and benefit of each individual medication. They put risk and benefits of the treatment. And there's already an Illinois Supreme Court case that says treatment is the whole claim, not each individual medication. You know, I think the state's kind of arguing the waiver by saying that the defense counsel didn't raise this, but it's really... That's why I put ineffective assistance of counsel. But I think it's more important for the state when we're proving that the risks are less than the benefits to address this issue. Especially, it's not in all cases, but like in this case, when there's two antipsychotics administered simultaneously, there are documented increased risks with that, but that was not addressed. So thank you for your time and consideration. I apologize again for the short notice in my motion, but... We understand. Thank you for your arguments. The Court will take this matter into advisement. We're into a decision in due course. Is that the last case where we're...